[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: FINANCIAL ORDERS
This matter was tried before the Regional Family Trial Docket, on a referral from the Danbury Judicial District, on November 4th through 12th 2002. The Plaintiff and Defendant testified and numerous exhibits were introduced. The court has considered all of the credible evidence presented to it and carefully considered the respective criteria for orders of custody, visitation and access, child support, health insurance, payment of children's medical expenses, alimony, property settlement, division of debt and award of counsel fees for the minor children and the Wife. The court makes the following findings of facts and orders:
The parties were married on September 15, 1993 in East Longmeadow, MA. The Wife is 34 years old and in excellent health. Ms. Trombly attended Skidmore College, with a major in Psychology and minor in Government. She attended law school at Western New England College School of Law and graduated in 1993. Ms. Trombly has been admitted to both the Massachusetts and Connecticut bars.
Since the date of the marriage Ms. Trombly has been employed at various health clubs as an aerobics instructor and as an attorney as a contract employee by a variety of law firms. She eventually obtained a permanent position with Piazza Melmed Berkowitz, which was later changed to Piazza Melmed and eventually formed her own law partnership known as Melmed Trombly. Attorney Trombly is currently self-employed.
Since approximately 1 996, Ms. Trombly's practice has centered on class action lawsuits. In February, 1999 she settled a Nationwide Insurance class action and her share of the attorneys fees awarded were $1,200,000.00. She paid federal taxes in the amount of $492,000 and state taxes of $53,000.00. The money was deposited into a joint Salomon Smith Barney account. The couple jointly spent this money and nearly depleted the account by October 2000. CT Page 14614
In October of 2000 Ms. Trombly settled another class action lawsuit against Countrywide Insurance and her share of the attorney's fees were $600,000.00. Ms. Trombly deposited the proceeds into an individual Salomon Smith Barney Account and transferred money to the couple's checking account and the joint Salomon Smith Barney account to pay the household bills as needed.
At the time of trial the Wife testified she had two other class actions pending. One for the cases is on appeal due to decertification and the other case is not close to settlement.
Mr. Trombly is 37 years old and in good health. He attended the University of St. Louis and received a B.S. in Biology. Mr. Trombly did some postgraduate work at Springfield College in Sports Medicine but never received a degree. He entered the job market as a microbiologist for Foodways, a division of Oreta. He was employed by Weight Watchers Food Company, a division of H.J. Heinz, and Food Ingredient Specialties. He is currently employed as a sales representative by Givaudan.
During the trial, the Wife made various allegations of fault on the part of the Husband. She alleged he had been unfaithful as a result of two letters she discovered to Mr. Trombly from other women. However, the letters were written prior to the date of the marriage and it was the Husband's testimony that they were written prior to the couples' engagement. Additionally, the letters failed to describe any acts of a sexual nature that would constitute infidelity.
Ms. Trombly alleged her Husband has a drinking problem based on her allegation that he sounded drunk during telephone calls to her while he was traveling and arriving home from a baseball game once drunk. No allegations were made that the Husband was ever drunk while caring for the couple's minor child or on a regular basis. The alleged isolated occasions of overindulgence are not considered by the court as evidence of an alcohol problem.
Ms. Trombly claimed that her Husband had a problem with over spending and that he made many purchases of unnecessary items at TJ Maxx and Marshalls. The parties agree that they both spent well over their joint incomes in the mid to late 1990's. A cursory examination of the Wife's current Financial Affidavit reveals that she has a problem with spending money that exceeds the alleged indulgences at discount stores. While she is reporting no income and claiming she is entitled to be a stay at home mother, she is spending in excess of $14,000 per year on clothing, $4,056 on herbs, and $4,264 on personal grooming. Mr. Trombly earns roughly CT Page 14615 $60,000 per year and has the potential for a maximum bonus in 2003 of $8,000. The court finds that Ms. Trombly's spending of $11,000 to $12,000per month during the pendancy of this action is deemed excessive to a far greater degree than Mr. Trombly's alleged overspending.
Ms. Trombly accused the Defendant of verbal and emotional abuse during the course of this marriage. She alleged she went along with whatever her Husband told her to do to keep the peace in the family. However, she also testified she was lead co-counsel and primary negotiator in several high stakes class action matters and at times managed over 50 attorneys. After observing the parties in court for 5 days the court does not find the Plaintiffs testimony regarding the alleged verbal and emotional abuse to be credible.
The court finds that both party contributed equally to the breakdown of the marriage.
The court carefully considered the proposed orders of each of the parties. The proposed orders of the Plaintiff, Wife are vindictive, unrealistic and not in the best interest of the family as a whole. Ms. Trombly has asked the court to award her all of the couples assets minus 25% of the proceeds from the sale of the family home, alimony, child support and sole custody of the minor child. The court refuses to do so as the facts and evidence do not justify orders of a punitive nature. Simply earning the bulk of the money during the latter part of the marriage does not entitle her to a grossly disproportionate share of the marital assets. Additionally, as noted above, unless she is willing to deplete her assets or return to work on a full time basis, she simply cannot afford to continue her current level of spending.
The Husband's proposed orders are also unrealistic in that he seeks an award of a portion of the Wife's individual Salomon Smith Barney account based on its value as of the date of filing for divorce. The court finds that the Wife transferred approximately $60,000 in funds from this account to the joint Salomon Smith Barney account. These funds were used by both of the parties to pay for household expenses and legal fees during these proceedings.
The court finds that it has jurisdiction over the marriage. One of the parties has lived in the State of Connecticut for more than one year prior to bringing this action. The following minor children have been born to the parties since the date of the marriage:
 Nicole Trombly date of birth June 10, 1999 CT Page 14616
No other minor children have been born to the Wife since the date of the marriage. The parties are not receiving state assistance. The court finds that the marriage between the parties has broken down irretrievably and there is no reasonable prospect of reconciliation.
After considering all of the statutory criteria set forth in General Statutes § 46b-84 as to support of a minor child, § 46b-215a-1
et. seq., Regs. Conn. State Agencies, as to child support, § 46b-62
as to counsel fees, § 46b-66a, as to conveyance of real property, § 46b-81, as to assignment of property and transfer of title, §46b-82, as to the award of alimony, § 46b-84, as to medical insurance for minor child, together with applicable case law and the evidence presented here, the court hereby enters the following orders:
1. DISSOLUTION OF MARRIAGE
A decree dissolving the marriage on the grounds of irretrievable breakdown shall enter on November 14, 2002.
2. INDIVIDUAL SALOMOM SMITH-BARNEY ACCOUNT
At the commencement of this matter, Plaintiff, Wife owned a Salomon Smith Barney brokerage account with a balance of $557,318.27. Taxes totaling $185,459.00 and referral fees of $11,320.00 were paid from that account. The current balance of the account is $99,314.00 and shall be the sole property of the Plaintiff, Wife. The court is characterizing the award of this asset to the Wife as lump sum alimony.
3. REAL ESTATE:
The family home located in Newtown, Connecticut was sold on October 1, 2002. From the gross proceeds of sale, after the payment of the outstanding real estate taxes, the first mortgage and the closing costs, 25% has been paid to the wife and 25% has been paid to the husband pursuant to a Stipulation of the parties approved by the court. The balance of $230,000.00 shall be divided equally between the parties within 14 days of the date of the judgment.
4. ALIMONY
Neither party shall pay periodic alimony to the other.
5. TIMESHARES:
The parties shall alternate the use and fees for the two timeshare assets CT Page 14617 from year to year, including each paying one-half of the outstanding fees, interest and late charges. If the parties agree to jointly sell either time-share, the proceeds shall be divided equally. The parties shall have the option of buying the share of the other party by giving the other 30 days notice of intent to purchase. The Husband and Wife shall determine a selling price within sixty (60) days of such notice. If the parties are unable to agree upon a price, each shall select a licensed appraiser, at their own expense, and the average price of the two appraisals shall be considered the fair market value price. The purchase price shall be one-half of the average appraised fair market value.
6. PENSIONS, IRA ACCOUNTS, 401K ACCOUNTS AND DEFERRED COMPENSATIONACCOUNTS:
Each party has certain deferred assets as reflected on their financial affidavits, which should be equalized by way of an IRA rollover valued as of the date of dissolution and transferred within thirty days thereafter.
7. 2001 FEDERAL AND STATE TAX REFUNDS:
The tax refunds for 2001 are in the amount of $7,268.00. The accountant's bill shall be paid first and the remaining balance shall be divided 75% to the husband and 25% to the wife. The refund would not have existed if not for the income of the Husband. However, the Wife's deductions increased the amount of the refund and she is entitled to 25% of the refund.
8. PERSONAL PROPERTY:
The Wife shall make the items of personal property listed on Schedule A available to the Husband for pickup within 90 days of the date of judgement. The minor child shall not be present during the transfer of personal property. If the parties have any further disputes over the disposition of personal property, the matter shall be mediated by Family Relations in Danbury, CT.
9. BANK ACCOUNTS:
Except as stated, all personal property, bank accounts, securities and partnership interests in the name and/or possession of the Wife as reflected on her financial affidavit shall be and remain the property of the Wife. Except as stated, all personal property, bank accounts, securities and partnership interests in the name and/or possession of the CT Page 14618 husband as reflected on the Husband's financial affidavit shall be and remain the property of the husband.
10. MOTOR VEHICLES:
The Wife shall be entitled to the motor vehicle reflected on her Financial Affidavit and she shall be solely responsible for all costs associated with her vehicle, and will indemnify and hold the defendant husband harmless with respect to any such costs.
11. MEDICAL INSURANCE — WIFE:
The Wife testified that she had obtained medical insurance coverage effective November 1, 2002. She shall be responsible for the payment of all premiums and unreimbursed medical personal medical expenses.
12. CUSTODY:
The orders entered by the court on November 12, 2002 regarding custody of and parenting access to the minor child are incorporated by reference, into the decree.
13. CHILD SUPPORT:
Neither party shall pay child support to the other due to the fact that the court has ordered shared parenting with the minor child spending approximately 50% of her time with each parent. This is a deviation from the Child Support Guidelines and in addition to the shared parenting orders assumes the wife has an earning capacity of a minimum of $60,000.00 per year. The court notes that based on the wife's earnings averaged over the past 3 years her earning capacity is in excess of $600,000 per year. The parties shall equally share the cost of the minor child's preschool tuition, summer camp, and extracurricular activities that have been agreed to in advance by the parties. If either parent wishes to take the child to an activity during their parenting time, that has not been agreed to in advance, he/she shall be solely responsible for the payment.
15. DIAMOND TENNIS BRACELET:
The diamond tennis bracelet given to the Wife by the Husband in an attempt to reconcile shall be the sole property of the Wife because she paid the credit card bill that this item was charged to.
16. FREQUENT FLYER MILES
CT Page 14619
If permitted by the Husband's employer, the parties shall equally share the frequent flyer miles and points accumulated by the Husband during the marriage. The transfer of the mileage (if permitted by the Husband's employer) shall be completed within 45 days from the date of judgement.
17. COUNSEL FEES:
Each party shall be responsible for the payment of their own legal fees.
BY THE COURT
 ___________________ Holly Abery-Wetstone, PJ
 SCHEDULE A
1. Neiman Marcus Loveseat
2. Dutailier rocker ottoman
3. Small cherry end table
4. Honda generator
5. Large and small rose oriental rugs
6. Two white formal chairs with pillows (from foyer)
7. Wooden Alpine step ladder (6 or 7 foot) gift from Husband's parents
8. Childcraft cherry dresser from Nicole's room CT Page 14620